IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| STEPHANIE MARIA BROWN, | ) | C/A No. 2:21-cv-00353-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Stephanie Marie Brown ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). *See* Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends reversing the decision of the Commissioner and remanding for an award of benefits.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, she is automatically substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 40 years old on her alleged disability onset date of August 1, 2012. (R. at 184.) Plaintiff originally claimed disability due to diabetes, asthma, major depression, anxiety, high blood pressure, high cholesterol, anemia, and obesity. (R. at 202.) Plaintiff has past relevant work as a cashier and a driver. (R. at 203.)

Plaintiff protectively filed an application for DIB on November 12, 2014, alleging disability that began on August 1, 2012. (R. at 10, 184–85.) Her application was denied initially and upon reconsideration. (R. at 10, 64–97.) After a hearing before an Administrative Law Judge ("ALJ") on September 28, 2017, the ALJ issued a decision on January 9, 2018, in which the ALJ found that Plaintiff was not disabled. (R. at 10–23.) After the Appeals Council declined the request for review, Plaintiff filed an action in the United States District Court for the District of South Carolina. On May 29, 2020, the District Court remanded the action for further proceedings. (R. at 922–39). The Court indicated remand was appropriate because the ALJ "failed to properly evaluate Plaintiff's subjective statements and this failure negatively impacted the ALJ's consideration of the third party function report and the consultant examiner's opinion." (R. at 923.)

Based on the District Court's Order, the Appeals Council vacated the ALJ's decision and remanded the case on June 4, 2020. (R. at 940–42.) A hearing was held on November 12, 2020, before the same ALJ who had issued the January 2018 decision. (R. at 838–60.) On December 3, 2020, the ALJ issued a decision finding Plaintiff was not disabled. (R. at 813–29.) The December 2020 decision is the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.

2

(2)    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2012 through her date last insured of June 30, 2015 (20 CFR 404.1571 et seq.).

(3)    Through the date last insured, the claimant had the following severe impairments:  degenerative disc disease, osteoarthritis, neuritis/bursitis of the left elbow, affective/anxiety disorders, asthma, and obesity (20 CFR 404.1520(c)).

(4)    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5)    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with:  occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders/ropes/scaffolds; frequent reaching, handling, and fingering; occasional overhead reaching; and, no concentrated exposure to extreme heat, respiratory irritants, and chemicals.  She would be further limited to simple, routine tasks for 2-hour periods followed by customary breaks with no public interaction and only occasional interaction with co-workers and supervisors.

(6)    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7)    The claimant was born on March 16, 1972 and was 43 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR 404.1563).

(8)    The claimant has a limited education (20 CFR 404.1564).

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (20 CFR 404.1569, 404.1569a).

(11)     The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2012, the alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(g)).

(R. at 816–29.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the

Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff asserts that the ALJ erred in the following ways: (1) by not finding Plaintiff's major depressive disorder and post-traumatic stress disorder to be severe; (2) by failing to credit the opinions of Plaintiff's treating physician; (3) by failing to credit the opinion of the consultative examiner; (4) by failing to credit the third-party function report; and (5) by failing to credit Plaintiff's statements regarding her functional limitations. (Dkt. No. 6 at 1.)

For the reasons discussed below, the undersigned cannot find the ALJ's decision is supported by substantial evidence. Further, remand for reconsideration would serve no useful purpose here, where this case has already been remanded and the ALJ has held two hearings on Plaintiff's application, which has been pending over seven years. Accordingly, the undersigned recommends remanding this case for an award of benefits.

### A.    Plaintiff's Subjective Statements

Plaintiff argues, *inter alia*, that the ALJ erred in assessing her subjective statements regarding her functional limitations. (Dkt. No. 6 at 19–20.) The Commissioner responds that the ALJ findings as to Plaintiff's subjective symptoms are supported by substantial evidence. (Dkt. No. 7 at 31.)

6

1.     **Standard**

SSR 16-3p provides a two-step process for evaluating an individual's symptoms.[2] First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). In the second step the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ should "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* 20 C.F.R. § 404.1529(c)(4) provides that when evaluating a claimant's subjective statements about his or her symptoms, the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you." The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig v. Chafer*, 76 F.3d 585, 595–96 (4th Cir. 1996), but neither is the ALJ required to accept the claimant's statements at face value; rather, the

---

[2] In March 2016 the Social Security Administration published SSR 16-3p, 2016 WL 1119029 (2016), which rescinds and supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. SSR 16-3p applies to determinations and decisions made on or after March 29, 2016. Thus, this regulation applies to the instant ALJ decision, which was decided on December 3, 2020. SSR 16-3p, 2017 WL 5180304, at *13 n.27 (S.S.A. Oct. 25, 2017) ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016."). Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors considered under SSR 96-7p.

ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2017 WL 5180304, at *6; *see also Arakas*, 983 F.3d at 95 ("[T]he ALJ must consider the entire case record and may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." (quoting SSR 16-3p, 2016 WL 1119029, at *5)).

### 2.      The ALJ's Decision and Record Evidence Pertaining to Subjective Statements

In his decision, the ALJ addressed Plaintiff's subjective statements regarding her activities and limitations during the relevant time period: from her alleged date of disability, August 1, 2012, through her date last insured, June 30, 2015:[3]

> She was able to tend to her personal hygiene, check her blood sugar, cook, take her medications independently, shop, drive, read, talk on the telephone, watch television, and spend time with her grandson (Exhibits 7E, 6F). She testified that she yells and screams. She reported that she has panic attacks. . . . Notably, the claimant reported that her husband is disabled, but that he has to help her with her activities of daily living.

(R. at 821.)

> At the time of the initial hearing, the claimant alleged that she was unable to work due to anxiety, depression, PTSD, panic attacks, diabetes with peripheral neuropathy, a pinched nerve in her neck, asthma, and fibromyalgia. She acknowledged that her husband, who is a disabled veteran, helps her carry out activities of daily living.

(R. at 823.)

A review of the above exhibits cited by the ALJ (Plaintiff's initial hearing testimony; the third-party function report of her husband, Kern Brown; the consultative examination performed

---

[3] Here, the undersigned recognizes that the ALJ found "the evidence summaries contained in the vacated decision to be in all respects full and fair statements of the underlying records" and he therefore did not "include a complete repetition of those summaries herein." (R. at 822.) However, per the District Court's May 29, 2020 Order, the ALJ's summary of Plaintiff's subjective statements in his prior decision was found inadequate and does not bolster the ALJ's analysis in the instant decision.

by Cashton B. Spivey, Ph.D.), provides some context to the ALJ's summary of Plaintiff's subjective statements and daily activities. Specifically, at the initial hearing, the ALJ asked Plaintiff if she can do certain things "around the home" when she is "using her back brace . . . like . . . cooking, cleaning, vacuuming, and laundry." (R. at 884.) Plaintiff testified that when she wears her back brace, she can "do cooking." (R. at 884.) The ALJ then asked, "Is there a limit to how long you can do that before you have to take a break," to which Plaintiff responded, "Standing over the stove, I'll prepare it, my husband will cook it." (R. at 884.) She also testified that she cannot take care of her "personal needs like dressing, bathing, feeding, toileting" when she is depressed. (R. at 886–87.) When asked if she is "responsible for anything at home that's just your job," Plaintiff replied, "No. Everybody is pulling together to help me around the house." (R. at 872.) Plaintiff testified that while she has a driver's license, she drives "no longer than 45 minutes" and usually her husband or daughter will drive. (R. at 885.) The ALJ's generalization that Plaintiff can "tend to her personal hygiene, . . . cook, . . . [and] drive" does not capture the further limitations Plaintiff noted at the hearing with respect to these activities. (R. at 821.)

Further, in his third party function report Mr. Brown stated that when they "have the grandbaby" he does all the cooking and cleaning. (R. at 235.) He stated that Plaintiff will change the baby's pull ups and wash the baby when he says to do so. (R. at 235.) Mr. Brown said the Plaintiff can "feed herself but [does not] eat much." (R. at 235.) He clarified that she prepares meals "bi-monthly" and it takes her "a long time" to do so. (R. at 236.) He stated it takes Plaintiff "months" to put away her clothes. (R. at 236.) While Mr. Brown checked boxes indicating Plaintiff shopped both in stores and by mail, he later stated that Plaintiff "does not go anywhere often except doctors appointment." (R. at 238.) He also stated that Plaintiff "doesn't walk to[o] often" and when she does she must rest for "hours" before she can resume walking. (R. at 239.) Mr. Brown stated

that "it's hard for my wife to work around other people because of being molested and sexual[ly] abused by family member. Anxiety sets in . . ." (R. at 234.)

Also, Dr. Spivey's consultative psychological evaluation stated, *inter alia*, that Plaintiff reported she "is capable of bathing and dressing independently as well as using a microwave oven"; "is capable of operating an automobile"; she "performs no household duties or chores"; she "enjoys spending time with her grandson" during her "leisure time"; and Plaintiff "will lay in bed all day with the television on." (R. at 488.) This summary of Plaintiff's subjective statements is consistent with Plaintiff's initial hearing testimony and the statements given by Mr. Brown.

Notably, the ALJ did not cite anywhere in his decision Plaintiff's function report, dated February 13, 2015. There, Plaintiff stated that her anxiety "keeps [her] afraid of being around people" and her diabetes "keeps [her] sick, very weak, no energy to do anything." (R. at 225.) She stated she bathes 1 or 2 times a week and her husband or daughter will remind her to take care of her personal hygiene and grooming and to take her medicine. (R. at 226–27.) She stated she can make sandwiches, but that she does not cook. (R. at 227.)

In his decision, the ALJ also considered Plaintiff's subjective statements regarding her activities and limitations after her date last insured:

> While the record contains medical records following her date last insured of June 30, 3015, I note that these records are marginally relevant to the claimant's claim for disability as they are chronologically distant from the claimant's date last insured. However, I do note that updated medical evidence considered in conjunction with the claimant's most recent testimony, reveals that since the date last insured, the claimant obtained her high school diploma, took some college classes, and cared for her grandchildren while her daughter worked. These are activities that are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. Additionally, the record documents that the claimant received unemployment benefits in 2020 (Exhibit 12D). While the receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits, it is a factor to be considered in determining whether the claimant is disabled as acceptance of unemployment benefits entails an assertion of the ability to work and is inconsistent with a claim of disability. 20 CFR 404.1512(d) and

416.912(b). Finally, the record does not document significant improvement in the claimant's medical condition since the date last insured, which suggests that the claimant's functioning during the relevant period was greater than she alleged.

. . .

At the most recent hearing, the claimant testified that her mental health conditions have worsened. She obtained her high school diploma when she was 40. She took some business classes at CSU, but was unable to continue due to poor attendance related to her physical health. She stopped attending school in 2018. She is unable to keep a log of her diet or keep up with her health due to depression. Since the last hearing, she was hospitalized for a pulmonary embolism. She applied for unemployment benefits in 2020, but does not remember answering questions about being able to work. In 2017, she was having trouble keeping up with her diet due to school and her grandchildren. She was helping watch her grandchildren while her daughter worked. Her diet is bad because food makes her anxiety better. She sleeps about 3 hours at night and is always mentally exhausted. Her mental state is deteriorating. She argues with people. She has migraines daily.

(R. at 822–23.)

Relevant here, the ALJ found

After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not completely supported by the objective evidence during the relevant period.

(R. at 823–24.)

### 3.    Analysis

In her brief, Plaintiff asserts that the ALJ erred in finding Plaintiff's testimony was not entirely consistent with the evidence of record and that this error negatively impacted his entire decision. (Dkt. No. 6 at 19–20.) The undersigned agrees. As an initial matter, the ALJ primarily relied on the lack of supportive objective evidence to discount Plaintiff's subjective statements. (R. at 824, "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not completely supported by the

objective evidence during the relevant period.") Such reliance on objective evidence is discouraged under recent Fourth Circuit case law. For example, in *Arakas*, the Fourth Circuit emphasized that an ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." 983 F.3d at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (internal quotation marks omitted)). Likewise, in *Lewis*, the Fourth Circuit found that requiring objective medical evidence to support a plaintiff's subjective evidence of pain "improperly increase[s] [claimant's] burden of proof." 858 F.3d at 866.

Further, the ALJ's discussion of Plaintiff's daily activities indicates he did not properly assess Plaintiff's subjective statements. First, as discussed above, the ALJ did not appear to consider Plaintiff's full initial hearing testimony about her limitations when considering her subjective statements. The ALJ's generalization that Plaintiff can "tend to her personal hygiene, . . . cook, . . . [and] drive" does not capture the further limitations Plaintiff noted at the initial hearing with respect to these activities. (R. at 821.) Additionally, the ALJ appeared to rely on Plaintiff's reported activities outside of the relevant time period as reason to discount her subjective statements. (R. at 822, "I do note that updated medical evidence considered in conjunction with the claimant's most recent testimony, reveals that since the date last insured, the claimant obtained her high school diploma, took some college classes, and cared for her grandchildren while her daughter worked.[4] These are activities that are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations."). The ALJ later cited Plaintiff's activities

---

[4] While the ALJ does not cite any exhibits here, he appears to rely on Plaintiff's testimony at the second ALJ hearing. A review of that testimony shows that when the ALJ asked for clarification as to whether Plaintiff was the caregiver for her grandchildren, Plaintiff responded, "No, no, no, no, no. That's not correct. I help watch my grandbabies. I was, because she had to work. And I'm nobody's caregiver, I just help as much as I can, and my husband helps as much as he can. And then my mother, she comes down and she help[s] all of us. Because I be in and out of the hospital, emergency, room, and my diet." (R. at 847–48.)

of daily living as a reason: (1) to afford "great weight" to the opinions of DSS medical consultants and (2) to afford "minimal weight" to the opinion of Plaintiff's husband, Mr. Brown. (R. at 826–27.) However, the ALJ's discussion of Plaintiff's daily activities is insufficient, for the reasons described above. Accordingly, had the ALJ properly considered Plaintiff's subjective statements and reported daily activities, he may have assessed the opinion evidence differently, which would have impacted his RFC finding.

In short, without a more detailed discussion of Plaintiff's subjective statements by the ALJ, the undersigned cannot determine whether the ALJ findings as to Plaintiff's subjective symptoms are supported by substantial evidence, and remand is appropriate on this basis. *See Lewis*, 858 F.3d at 866 (remanding in part because "the ALJ failed to explain in his decision what statements by [claimant] undercut her subjective evidence of pain intensity as limiting her functional capacity") (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.")).

### B.    Consideration of Treating Physician's Opinion

Plaintiff further argues, *inter alia*, that the ALJ erred in assessing the opinions of her treating physician. (Dkt. No. 6 at 19–20.) The Commissioner responds that the ALJ's assessment here is supported by substantial evidence. (Dkt. No. 7 at 23–26.)

#### 1.    Standard

An ALJ is required to assign weight to every medical opinion in a claimant's record. 20 C.F.R. §§ 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); 404.1527(c)(2) ("We will always give good reasons in our notice of determination or

decision for the weight we give your treating source's opinion."). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. 404.1527(c)(2). The Fourth Circuit has recently reiterated the treating physician rule in *Arakas v. Commissioner*, explaining that a treating physician "opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record."[5] 983 F.3d at 107 (emphasis in original) (citing 20 C.F.R. § 404.1527(c)(2); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). According to another recent Fourth Circuit opinion,

> [I]f a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty'" and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling*, 986 F.3d at 384–85 (quoting 20 C.F.R. § 404.1527(c)(2)(i)–(6)).  The *Arakas* Court observed that "SSR 96-2p further notes that '[i]n many cases, a treating [physician's] medical opinion will be entitled to the *greatest* weight and should be adopted, even if it does not meet the test for *controlling* weight.'"[6] *Arakas*, 983 F.3d at 106–07 (alterations and emphasis in original) (quoting SSR 96-2p).

---

[5] The Social Security Administration has amended the "Treating Physician Rule," effective March 27, 2017, for claims filed after that date. *See* 20 C.F.R. § 416.920c; *see also Marshall v. Berryhill*, Case No. 16-cv-00666-BAS-PCL, 2017 WL 2060658, at *3 n.4 (S.D. Cal. May 12, 2017). Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because Plaintiff's claim was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

[6] SSR 96-2P was rescinded effective March 27, 2017 as part of the amendment of the "Treating Physician Rule." SSA-2012-0035, 2017 WL 3928298. However, it was in effect at the time the Plaintiff filed her claim.

### 2.    The Opinions of Plaintiff's Treating Physician and the ALJ's Decision

The records show that Plaintiff's primary care physician, Dr. Payam Yousefian, treated her for a number of issues over the years she saw him. (*See, e.g.*, R. at 319–65, 422–85.) On May 19, 2015, Dr. Yousefian wrote a letter detailing Plaintiff's various medical issues, noting she "suffer[ed] from severe anxiety with depression as well as panic attacks with insomnia[,]" and she also had a history of type 2 diabetes, asthma, iron deficiency anemia secondary to dysmenorrhea and uterine fibroids, dyslipidemia, hypertension, osteoarthritis, and vitamin D deficiency. (R. at 491.) She had been started on pharmacotherapy but had also been referred to specialists for some of her issues. (*Id.*) According to Dr. Yousefian, "due to her comorbidities, which are remarkable in nature, the patient is unable to hold successful employment." (*Id.*)

Subsequently, on May 6, 2016, Dr. Yousefian filled out a Disability Impairment Questionnaire. (R. at 808–12.) In the questionnaire, Dr. Yousefian indicated that he had treated Plaintiff for several years, seeing her every three months, and he had most recently examined her on May 5, 2016. (R. at 808.) Dr. Yousefian listed Plaintiff's diagnoses as "anxiety, insomnia, panic attacks, [diabetes mellitus], iron def anemia, uterine fibroids, obesity, dysmenorrhea, asthma, depression, dyslipidemia, hypertension, [osteoarthritis], vit D def[.]" (*Id.*) When asked to attach clinical and laboratory findings in support of those diagnoses, Dr. Yousefian wrote "several years of care." (*Id.*) He indicated that Plaintiff's impairments were expected to last at least twelve months, but Plaintiff was not a malingerer. (*Id.*) Dr. Yousefian indicated that Plaintiff's primary symptoms were both psychological and physical. (R. at 809.) She had persistent, chronic pain in her neck and elbow due to osteoarthritis. (*Id.*) Other treatments for Plaintiff's issues included medications and specialists. (*Id.*) Dr. Yousefian opined that Plaintiff could perform a job in a seated position for less than an hour and could similarly perform a job standing and/or walking for

15

less than an hour in a workday. (R. at 810.) According to Dr. Yousefian, it was medically necessary for Plaintiff to avoid sitting continuously during an eight-hour workday, and she would need to get up to move around every thirty minutes for about ten to fifteen minutes at a time. (*Id.*) Plaintiff could lift or carry five pounds or less occasionally but could never lift or carry more than that. (*Id.*) Plaintiff had significant manipulative limitations, and Dr. Yousefian indicated she could only occasionally do the following: grasp, turn, and twist objects; use hands/fingers for fine manipulations; and use arms for reaching. (R. at 811.) Dr. Yousefian opined that Plaintiff's symptoms would likely increase if she was placed in a competitive work environment. (*Id.*) He also indicated that she would frequently experience pain, fatigue, or other symptoms that would interfere with her attention and concentration. (*Id.*) As a result, she would need frequent unscheduled breaks during the course of an eight-hour workday. (*Id.*) Plaintiff would be absent from work more than three times a month due to her impairments or treatment. (R. at 812.) Also, according to Dr. Yousefian, Plaintiff's increased depression affected her functional limitations. (*Id.*)

In his decision, the ALJ found Dr. Yousefian's opinions were not entitled to controlling weight based on the following reasoning:

> I accord less than controlling weight to Dr. Yousefian's opinion from May 2015 that the claimant was unable to hold successful employment. The treating physician's opinion is more a vocational opinion than a medical opinion and thus is not worthy of great weight. I also give little weight to Dr. Yousefian's assessment from May 2016 that the claimant could not sit for more than one hour. Dr. Yousefian offered no rationale for this conclusion other than providing a list of the claimant's impairments. The doctor's assessments appear to be based primarily on the claimant's subjective symptoms, which, for reasons stated in detail above, are not reliable. Additionally, the doctor's assessments are devoid of any explanation, rationale, clinical findings, or reference to objective testing. The lack of substantial support from other objective evidence of record renders the opinions less persuasive (Exhibits 7F, 8F/3, and 20F).

(R. at 826.)

16

###     3.     Analysis

Plaintiff argues that the ALJ did not properly review Dr. Yousefian's opinion in accordance with the factors set forth in 20 C.F.R. § 404.1527(c).  (Dkt. No. 6 at 13–14.)  Specifically, Plaintiff asserts that the ALJ did not evaluate the consistency of Dr. Yousefian's opinion with the treatment record.  (Dkt. No. 6 at 15–17.)  In response, the Commissioner argues that the ALJ properly rejected Dr. Yousefian's May 2015 opinion that Plaintiff was "unable to hold successful employment" because the substance of the opinion was an issue specifically reserved to the Commissioner.  (Dkt. No. 7 at 24 (citing 20 C.F.R. § 404.1527(d)(1), (3)).)  As to Dr. Yousefian's May 2016 opinion, the Commissioner argues that substantial evidence supports the ALJ's conclusion that it was entitled to little weight.  (Dkt. No. 7 at 24–26.)  The Commissioner asserts that "Dr. Yousefian's opinion is undermined by her own repeatedly normal physical examination findings from her contemporaneous treatment notes and her failure to support her opinion with medical facts."  (Dkt. No. 7 at 25.)

As an initial matter, the undersigned agrees with the Commissioner that the ALJ followed 20 C.F.R. 404.1527(d) in rejecting Dr. Yousefian's May 2015 opinion since it constituted an opinion on an issue reserved to the Commissioner, as opposed to a medical opinion.  Dr. Yousefian's May 2016 opinion, on the other hand, included opinions regarding the nature and severity of Plaintiff's impairments and other functional limitations. Therefore, because the ALJ declined to give this treating physician's May 2016 opinion controlling weight, he was required to meaningfully consider each of the factors under 20 C.F.R. § 404.1527(c). *See Dowling*, 986 F.3d at 385

As recently emphasized by the Fourth Circuit, "it must . . . be apparent from the ALJ's decision that he meaningfully considered *each* of the factors [under 20 C.F.R. § 404.1527(c)]

before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385 (emphasis in original). Here, the undersigned cannot find the ALJ meaningfully considered the consistency of Dr. Yosefian's opinion with the record. As an initial matter, the ALJ failed to explain which specific medical records he found inconsistent with Dr. Yousefian's opinions. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Rather, the ALJ generally stated the opinion lacked "substantial support from the other objective evidence of record."[7] (R. at 826.) Further, he rejected the opinion in part because "[t]he doctor's assessments appear to be based primarily on the claimant's subjective symptoms." (R. at 826.) However, as discussed *supra* section A, the undersigned cannot find the ALJ's consideration of Plaintiff's subjective statements is supported by substantial evidence. Accordingly, the undersigned also cannot find the ALJ properly rejected Dr. Yousefian's opinions in part because they were based on Plaintiff's subjective statements.

Here, the undersigned notes another troubling aspect of the ALJ's analysis. Other than Dr. Yousefian's opinion that Plaintiff could not sit for more than one hour, the ALJ did not specifically address any of the other functional limitations opined by Dr. Yousefian in his May 2016 opinion. (R. at 826.) As noted above, Dr. Yousefian assessed many severe functional limitations including that: (1) Plaintiff could lift or carry five pounds or less occasionally but could never lift or carry more than that; and that (2) Plaintiff only occasionally grasp, turn, and twist objects; use hands/fingers for fine manipulations; and use arms for reaching. (R. at 810–11.) Notably, in his RFC finding, the ALJ did not assess any lifting or carrying limitations and he assessed "frequent reaching, handling, and fingering." (R. at 822.) The ALJ's failure to acknowledge the range of

---

[7] Here, the ALJ cited "Exhibits 7F, 8F/3, and 20F," which reference only Dr. Yousefian's opinions.

severe limitations opined by Dr. Yousefian is particularly concerning given his express statement that "none of the claimant's treating or evaluating physicians has made any medical opinion regarding the claimant's functional limitations." (R. at 825.) Because the ALJ did not reconcile inconsistencies between the RFC he assessed and the limitations opined by Dr. Yousefian, substantial evidence does not support his RFC assessment. *See Mary H. v. Kijakazi*, No. 1:20-CV-4096-SVH, 2021 WL 4077488, at *25 (D.S.C. Sept. 8, 2021) (noting "Dr. Kingery opined as to several specific restrictions the ALJ failed to directly address"; "Because the ALJ did not reconcile inconsistencies between the RFC she assessed and Dr. Kingery's opinion, substantial evidence does not support her RFC assessment.") (citing SSR 96-8p, 1996 WL 374184, at *7 ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.")).

### C.    Recommendation to Remand with Award of Benefits

Having found multiple errors in the ALJ's decision, remand is appropriate.[8] The Fourth Circuit has held that it is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

Plaintiff asserts here that the significant errors in the ALJ's decision warrant the award of benefits on remand. (Dkt. No. 6 at 20.) The undersigned agrees, given the procedural history of this case. Remand for reconsideration would serve no useful purpose here, where this case has already been remanded and the ALJ has held two hearings on Plaintiff's application, which has

---

[8] While Plaintiff has alleged additional errors, the undersigned finds that the errors addressed herein are sufficient to support remanding this case for an award of benefits. Accordingly, the undersigned does not consider the remaining allegations of error.

19

been pending over seven years. *See*, *e.g.*, *Anderson v. Saul*, No. 7:19-CV-132-BO, 2021 WL 328846, at *2 (E.D.N.C. Feb. 1, 2021) (remanding for award of benefits where "reopening this case for another hearing would serve no purpose"); *Gilliard v. Berryhill*, No. 8:17-CV-1435-RMG, 2018 WL 4092069, at *3 (D.S.C. Aug. 28, 2018) (remanding for award of benefits where claimant's application has been pending for six years).

## **CONCLUSION**

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for an award of benefits.

IT IS SO RECOMMENDED.

October 26, 2021

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).